UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| DONALD VOGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  1:20 CV 01 CDP |
| | ) | |
| ANDREW M. SAUL, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Donald Vogler brings this action under 42 U.S.C. §§ 405 and 1383

seeking judicial review of the Commissioner's final decision denying his claims for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.*, and for supplemental security income (SSI) under Title XVI

of the Act, 42 U.S.C. §§ 1381, *et seq.*  Because the Commissioner's final decision is

supported by substantial evidence on the record as a whole, I must affirm the

decision.

### Procedural History

On February 8, 2017, the Social Security Administration denied Vogler's

January 9, 2017 applications for DIB and SSI, in which he claimed he became

disabled on January 1, 2014, because of stress, anxiety, inability to be around

people, bulging disc in the lower back, deteriorating bone disease, learning

disability, high blood pressure, and insulin deficiency.[1]  Vogler was twenty-two

years old when he filed his applications.  A hearing was held before an

administrative law judge (ALJ) on October 26, 2018, at which Vogler and a

vocational expert testified.  On January 25, 2019, the ALJ denied Vogler's claims

for benefits, finding the vocational expert's testimony to support a finding that

Vogler could perform work that exists in significant numbers in the national

economy.  On December 13, 2019, the Appeals Council denied Vogler's request for

review of the ALJ's decision.  The ALJ's decision is thus the final decision of the

Commissioner.  42 U.S.C. § 405(g).

In this action for judicial review, Vogler claims that the ALJ's decision is not

supported by substantial evidence on the record as a whole, arguing that the ALJ

improperly determined at Step 2 of the sequential analysis that Vogler's mental

impairments and knee impairments were not severe.  Vogler asks that I reverse the

ALJ's decision and award benefits or, alternatively, remand for further proceedings.

For the reasons that follow, I affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

Plaintiff Donald Vogler is a young man who has a history of degenerative

disc disease of the lumbar spine for which he underwent surgery in January 2016.

---

[1] On January 20, 2017, Vogler applied for Child's Insurance Benefits, claiming that his disability began before he attained twenty-two years of age.  In his complaint here, Vogler does not challenge the administrative law judge's decision to deny this application for child's benefits.

He later injured his right knee in September 2017 while performing physical labor, and he injured his left knee in March 2018 while doing jumping jacks.  Vogler also has a history of anxiety and depression for which he takes psychotropic medication and has participated in psychological counseling.

The ALJ limited Vogler to sedentary work based on an RFC that contained limitations caused by Vogler's back impairment.  The ALJ determined that Vogler's knee impairments and mental impairments were not severe.  The RFC did not include any limitations attributable to these non-severe impairments.

With respect to the medical records and other evidence of record, I adopt Vogler's recitation of facts set forth in his Statement of Facts (ECF 14) and note that they are admitted in their entirety, with clarification, by the Commissioner (ECF 16-1).  Vogler does not dispute the Commissioner's clarifications.  The facts proffered by the parties provide a fair and accurate description of the relevant record before the Court.  Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A.   Legal Standard

To be eligible for DIB and SSI under the Social Security Act, Vogler must prove that he is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir.

1992).  The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether he has a severe impairment; and whether his severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC

- 4 -

assessment occurs at fourth step of process).  If the claimant is unable to perform his

past work, the Commissioner continues to Step 5 and determines whether the

claimant can perform other work as it exists in significant numbers in the national

economy.  If so, the claimant is found not to be disabled, and disability benefits are

denied.

The claimant bears the burden through Step 4 of the analysis.  If he meets this

burden and shows that he is unable to perform his past relevant work, the burden

shifts to the Commissioner at Step 5 to produce evidence demonstrating that the

claimant has the RFC to perform other jobs in the national economy that exist in

significant numbers and are consistent with his impairments and vocational factors

such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702

(8th Cir. 2012).  If the claimant has nonexertional limitations, including those

caused by a severe mental impairment, the Commissioner may satisfy his burden at

Step 5 through the testimony of a vocational expert.  *King v. Astrue*, 564 F.3d 978,

980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial

evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402

U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010).

Substantial evidence is less than a preponderance but enough that a reasonable

person would find it adequate to support the conclusion.  *Jones*, 619 F.3d at 968.

Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.     The ALJ's Decision

The ALJ found that Vogler met the requirements of the Social Security Act through June 30, 2016 (Tr. 25), and that he had not engaged in substantial gainful activity since January 1, 2014, the alleged onset date of disability (Tr. 27). The ALJ found that Vogler's degenerative disc disease of the lumbar spine was a severe impairment, but that it did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Vogler's claimed mental impairments and knee impairments were not severe. (Tr. 28-30.)[2] The ALJ

---

[2] The ALJ also found that Vogler's claimed allergies and allergic rhinitis were non-severe. (Tr. 28.) Vogler does not challenge this finding.

found that Vogler had the RFC to perform sedentary work except that he "must avoid concentrated exposure to vibration, pulmonary irritants such as dust, fumes, and gases, and hazards such as unprotected heights and moving or dangerous machinery." (Tr. 30.)

The ALJ determined that Vogler could not perform his past relevant work as a landscape laborer. Considering Vogler's RFC and his age, education, and work experience, the ALJ found vocational expert testimony to support a conclusion that Vogler could perform work as it exists in significant numbers in the national economy, and specifically, as a food-and-beverage order clerk, ampoule sealer, and stuffer. The ALJ thus found that Vogler was not under a disability from January 1, 2014, through the date of the decision. (Tr. 33-34.)

C.   Step 2 Analysis

Vogler claims that the ALJ erred at Step 2 of the sequential analysis when he determined that Vogler's knee impairments and mental impairments were not severe. For the following reasons, the ALJ did not err in this determination.

A severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities and has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c) and 404.1509; 20 C.F.R. §§ 416.920(a)(4)(ii), (c) and 416.909. The claimant bears the burden of establishing a severe impairment at Step 2 of the evaluation

process, requiring him to demonstrate that the impairment(s) more than minimally impacts his ability to work.  *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996).  While the claimant's burden at this stage "is not great" and establishing severity may not be an onerous requirement, *Caviness*, 250 F.3d at 605, the Step 2 analysis nevertheless is "not a toothless standard[.]"  *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

1.    *Knee Impairments*

Vogler went to the emergency room on October 1, 2017, complaining of pain in his right knee.  He reported that he twisted the knee and heard a pop the day before while putting together a wrestling ring.  Examination showed normal range of motion about the knee, normal motor strength, and no pain or tenderness with palpation.  Vogler described his pain as being on the "inside."  X-rays showed no fracture or dislocation.  Vogler was given an immobilizer and a walker and was discharged with a diagnosis of knee sprain.  (Tr. 603-09.)  An MRI taken October 10 showed a low-grade sprain with extensive bone marrow edema and contusion, nondisplaced fracture, patellar dislocation/relocation injury, osteophyte formation, and chondrosis with cartilage ulceration.  (Tr. 602.)  After these initial reports of knee injury and diagnostic testing, however, the record is devoid of any complaints and/or treatment regarding Vogler's right knee.  In fact, during several healthcare visits throughout the remainder of 2017 and into February 2018, Vogler denied any

related symptoms and had no complaints of knee pain.  (*See*, *e.g.*, Tr. 660, 710-11, 732-44.)  And he reported in February 2018 that he walked four times a week for exercise.  (Tr. 710-13.)

On March 3, 2018, Vogler went to the emergency room with complaints of pain in his left knee.  Vogler reported that he felt a pop while he was doing jumping jacks.  Examination showed that range of motion about the knee was normal, and there was no swelling.  Vogler experienced tenderness with palpation.  X-rays showed no fracture or dislocation.  Vogler was prescribed meloxicam and an ace bandage was applied to the knee.  Vogler was discharged with a diagnosis of knee sprain and was instructed to follow up with an orthopedist if symptoms persisted.  (Tr. 847-869.)  The record shows that Vogler did not follow up with an orthopedist; he made no complaints of any knee pain (left or right) to any healthcare provider during several visits after March 3; and musculoskeletal examinations during these visits were normal.  (*See* 689-703, 720-28.)  Further, Vogler continued to report after March 3 that he walked four times a week for exercise, and treatment notes from August through October 2018 reported that Vogler performed physical labor.  (*See* Tr. 692, 700, 720-28.)  Finally, Vogler testified at the administrative hearing in October 2018 that he had not taken any pain medication for over a year, and that the only physical problems he experienced involved his back.  (Tr. 57-58, 63.)

In finding that Vogler's claimed knee impairments were not severe, the ALJ

noted specifically that Vogler's gait was consistently observed as normal during examinations, that Vogler never sought treatment from a specialist, that surgical intervention was not required, and that Vogler does not take any pain medication. (Tr. 28.)  The ALJ also noted in his decision that Vogler had no problem with balance, walked several times weekly for exercise, was able to mow lawns, and performed physical labor.  (Tr. 32.)  Given that Vogler neither sought nor required any further treatment for his knee impairments, and he exhibited no related limitations in later physical examinations or in his daily activities, the ALJ did not err in finding that these impairments were not severe.  *See Medley v. Saul*, No. 1:18 CV 211 CDP, 2019 WL 4169190, at *4 (E.D. Mo. Sept. 3, 2019).  While MRI imaging in October 2017 showed issues involving the right knee, Vogler must show more than the mere presence of a condition or ailment for the impairment to be considered severe under the Regulations.  *See* 80 A.L.R. Fed. 564 (1986).  He failed to do so here.

There simply is no medical evidence showing that Vogler suffered from knee impairments for twelve continuous months that significantly limited his ability to do basic work activities.  Because substantial evidence on the record as a whole supports the ALJ's determination that Vogler's knee impairments were not severe, the ALJ did not err in this determination.  *Medley*, 2019 WL 4169190, at *4-5.

2.    *Mental Impairments*

The record shows that Vogler has a history of anxiety and depression dating back to 2012.  In December 2014, within the relevant period under judicial review, Vogler reported to Cross Trails Medical Center that his 50 mg dosage of Zoloft was no longer effective, and the dosage was increased to 100 mg.  (Tr. 536-40.) Thereafter, Vogler reported that Zoloft worked well for him, mental status examinations were normal, and depression screenings yielded no depressive symptoms.  (*E.g.*, Tr. 346, 354-55, 522.)  In December 2015, however, Vogler reported that he had recently changed medication to Celexa because Zoloft caused balding, and he was now experiencing depressive symptoms and panic episodes. Cross Trails increased Vogler's Celexa dosage to 40 mg.  (Tr. 498-500.)  Thereafter, Vogler's mental status examinations were normal, and depression screenings yielded no depressive symptoms.  (*E.g.*, Tr. 365, 482.)

In November 2016, Vogler visited Cape Family Practice and reported increased worry and panic.  Celexa was discontinued and Lexapro was prescribed. (Tr. 390-92.)  Four weeks later, in response to Vogler's continued complaints of worry and panic, Cape Family Practice increased Vogler's dosage of Lexapro and prescribed Xanax.  (Tr. 396-98.)  Thereafter, beginning in January 2017, depression screenings showed no depressive symptoms and Vogler did not complain of or display any behavioral issues.  (*E.g.*, Tr, 630, 634.)

Vogler returned to Cross Trails on September 7, 2017, and requested

medication refills for depression and anxiety.  He reported that Cape Family Practice no longer accepted his insurance.[3]  Dr. Oldrich Bubenik prescribed 100 mg Zoloft and instructed Vogler to taper off of Xanax.  (Tr. 714-18.)

One week later, on September 15, Vogler went to the emergency room at Southeast Missouri Medical Center and reported that he was about to have a panic attack.  He reported that he recently stopped taking Xanax and had not yet started Klonopin, a new prescription.[4]  Vogler was given one dose of Xanax and was discharged that same date with instruction to follow up with Bootheel Counseling. (Tr. 625-29.)  Vogler returned to the emergency room the following day and reported increased anxiety and depression.  He was afraid to be home alone.  He stated that he needed help, did not want to "live like this," and wished someone would "end it for him."  He was voluntarily admitted to the hospital's psychiatric unit that same date in stable condition.  (Tr. 610-24.)  Although the record does not contain any discharge information, Vogler later told Bootheel Counseling that he was hospitalized for four days.  (Tr. 575.)  He testified at the administrative hearing that he was hospitalized for three days.  (Tr. 68.)

Vogler began treatment with Bootheel Counseling on November 1, 2017.  He

---

[3] The record shows that Vogler's last documented visit at Cape Family Practice was December 12, 2016.  (Tr. 396.)

[4] The record does not show that Vogler was prescribed Klonopin before this emergency room visit.

- 12 -

reported that he was hospitalized in September after he stopped taking Xanax cold turkey and went into withdrawal.  Dr. Linda Kohler noted that Vogler's current medications included Cymbalta and Klonopin.  Mental status examination showed Vogler to be anxious but was otherwise normal in all respects.  Vogler described minimal symptoms and reported that they created no difficulties for him "at all." After examination, Dr. Kohler diagnosed Vogler with panic disorder and major depressive disorder, single episode, mild.  (Tr. 575-79.)  On December 1, Vogler reported to Bootheel Counseling that his medications were working.  Mental status examination was normal in all respects.  Vogler no longer appeared anxious.  Dr. Kohler continued him on his medications.  (Tr. 571, 580-82.)

In the meanwhile, Vogler established primary care at MedStop One on November 21, 2017, at which time Vogler's diagnosed anxiety and depression were noted.  It was further noted that such conditions were stable and managed with medication that Vogler described as "working well."  (Tr. 741.)  Throughout December 2017 and January 2018, Vogler reported to MedStop that he was not depressed or anxious, nor had panic attacks.  (Tr. 730-39.)

In the Spring of 2018, Vogler continued to report to Bootheel Counseling that his medications were working.  (Tr. 572-73.)  Mental status examination was normal in all respects in March, but Vogler's insight and judgment were noted to be poor in May without explanation.  Vogler was continued on his medications.  (Tr. 583-88.)

- 13 -

Vogler visited Cross Trails during this same period and reported having no depressive symptoms, worries, or stress, and that he did not feel socially isolated. (Tr. 689-709.)

On July 10, 2018, Vogler reported to Bootheel Counseling that his anxiety had been "acting up," and he felt his medications no longer worked.  Dr. Kohler noted that Vogler was irritable, but mental status examination was normal in all other respects.  Dr. Kohler increased Vogler's dosage of Klonopin, continued the present dosage of Cymbalta, and added Vraylar to Vogler's medication regimen. Refills on all medications were authorized into October.  (Tr. 574, 589-91.)

Vogler visited MedStop on September 5, 2018, and requested refills of Klonopin and Cymbalta.  Vogler stated that he wanted only one healthcare provider and therefore no longer wanted to get these prescriptions from Bootheel Counseling. Vogler reported that he had been taking the medications for one year and was stable on them.  Physical and psychological exams were normal in all respects.  Given the stability of Vogler's mental condition, MedStop instructed Vogler to continue with treatment at Bootheel Counseling.  (Tr. 724-25.)

In finding that Vogler's mental impairments were not severe, the ALJ properly engaged in the analysis under 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3), which require the Commissioner to rate the degree of functional limitation a claimant experiences as a result of mental impairment(s) in the areas of

understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and adapting or managing oneself.

> When we rate your degree of limitation in these areas . . . , we will
> use the following five-point scale:  None, mild, moderate, marked,
> and extreme. . . . If we rate the degrees of your limitation as "none"
> or "mild," we will generally conclude that your impairment(s) is
> not severe, unless the evidence otherwise indicates that there is
> more than a minimal limitation in your ability to do basic work
> activities.

20 C.F.R. §§ 404.1520a(c)(4), (d)(1); 20 C.F.R. §§ 416.920a(c)(4), (d)(1).  Here, the ALJ rated the degree of Vogler's limitations as "mild" in all areas of functioning and concluded that Vogler's mental impairments were not severe.  Substantial evidence on the record as a whole supports these ratings and the ALJ's conclusion.

First, in the area of understanding, remembering, or applying information, the ALJ noted that Vogler complained of experiencing difficulties in this domain, including struggling in school and being forgetful.  But the ALJ also observed that Vogler could read and write, as capably demonstrated in his medical paperwork; did not complain of memory loss during treatment; nor was diagnosed with any type of cognitive impairment.  (Tr. 29.)  And a review of the medical record shows that Vogler never exhibited any limitation regarding his ability to understand, remember, or apply information.  Indeed, mental status examinations in this regard were consistently normal.  Upon weighing the evidence of record before him, the ALJ did not err in finding Vogler to be mildly limited in this area of functioning.

Regarding Vogler's ability to interact with others, the ALJ noted that
although Vogler complained of wanting to isolate himself and of being nervous in
public, he continued to shop in stores and enjoyed going to movies with a friend.
The ALJ also noted that treatment records showed that Vogler was cooperative with
others during treatment.  (Tr. 29.)  And a review of the record shows that Vogler
never reported to his healthcare providers, mental or otherwise, that he wished to
isolate himself or experienced difficulties interacting with other people.  In fact,
Vogler reported to Cross Trails in March, May, and June 2018, that he was not
socially isolated "at all."  (Tr. 689, 697, 704.)  Upon review of the evidence on the
record as a whole, I cannot say that the ALJ erred in finding that Vogler had only
mild limitations in this area of functioning.

In the area of concentration, persistence, or pace, the ALJ noted that Vogler
did not claim any difficulty with concentration and indeed reported that he could
play video games and watch movies.  (Tr. 29.)  The ALJ also noted that Vogler
displayed normal attention and concentration on examination (*id.*) and, indeed, the
medical record shows that he consistently did so.  (*E.g.*, Tr. 498, 575, 697.)  Vogler
testified that he could perform simple math (Tr. 49) and was able to perform
seasonal work as a landscape worker (Tr. 51-52).  The ALJ noted that Vogler
reported in his Function Report that he had problems completing tasks (Tr. 29), but
Vogler did not explain in the Report what difficulty he had or the type of tasks at

issue.  (*See* Tr. 294-308.)  And while Vogler testified that he loses focus when he

reads, he also testified that this occurs only after reading for a long period of time.

(Tr. 72).  On this record, the ALJ did not err in finding that Vogler experienced only

mild limitations in this area of functioning.

Finally, in the area of adapting or managing oneself, the ALJ noted Vogler's

complaints of feeling stressed, overwhelmed, and attending to his personal hygiene

only once or twice a week.  The ALJ noted, however, that the record consistently

showed Vogler to be well-groomed at his appointments.  (Tr. 29-30.)  The record

also shows that Vogler responded "not at all" at several appointments when asked if

he felt down, hopeless, or experienced little interest in activities (*e.g.*, Tr. 458, 689,

704), and his isolated complaints of stress appeared to resolve with an adjustment in

medication.  Finally, the ALJ noted that although Vogler reported in his Function

Report that his parents performed all the chores and prepared the meals, nothing in

the record demonstrated that Vogler was incapable of performing such tasks.  (Tr.

30.)  Substantial evidence on the record as a whole supports the ALJ's determination

that Vogler was only mildly limited in this last area of functioning.

Nor does the evidence otherwise indicate that Vogler's mental impairments

caused more than a minimal limitation in his ability to do basic work activities.  As

noted by the ALJ, the record shows that Vogler's symptoms are controlled with

medication and are considered stable with treatment.  The ALJ also noted that the

exacerbation of symptoms and resulting hospitalization in September 2017 were a result of Vogler stopping his medication. *See Nguyen*, 75 F.3d at 431 (claimant failed to demonstrate that impairment was more than slight where medical evidence showed impairment improved with medication); *Richmond v. Callahan*, 998 F. Supp. 1007, 1011 (W.D. Ark. 1997) (affirming Commissioner's decision to terminate analysis at Step Two where it was shown that medication controlled condition) (citing *Williams v. Sullivan*, 960 F.2d 86, 89 (8th Cir. 1992); *Warford v. Bowen*, 875 F.2d 671, 673 (8th Cir. 1989)), *aff'd sub nom. Richmond v. Apfel*, 141 F.3d 1170 (8th Cir. 1998) (table).  Nevertheless, this isolated episode of symptom-exacerbation does not overcome the ALJ's supported determination that Vogler's mental impairments were not severe, especially where Vogler consistently exhibited normal mood and affect during several examinations, including those unrelated to his mental impairments. *See Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001).

Accordingly, the ALJ properly analyzed the severity of Vogler's mental impairments under the Regulations, and his determination that the impairments were not severe is supported by substantial evidence on the record as a whole.

## Conclusion

Because a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Vogler's knee impairments and mental

impairments were not severe under Step 2 of the Commissioner's five-step sequential analysis, I must affirm this determination.  *Simmons*, 264 F.3d at 755. Vogler makes no other challenge to the ALJ's decision to deny his applications for benefits.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and plaintiff Donald Vogler's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of October, 2020.